**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **V.** | : | **CRIMINAL NUMBER 25-384-1** |
| | : | |
| | : | |
| **MIYA V. PACK** | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Miya V. Pack, a former member of the United States Navy, has accepted full responsibility for voting twice in the 2024 presidential election. To her great shame, she now has a felony on her record. Apart from her military service, Ms. Pack has a strong work history and is currently enrolled in school to become a dietician. The defense urges the Court to accept the jointly recommended sentence of probation which is within the guideline range. Such a sentence is sufficient but not greater than necessary to fulfill the goals of sentencing and the factors outlined in 18 U.S.C. §3553(a) and is consistent with Congress's instruction pursuant to 18 U.S.C. §994(j).

The defense has no objections to the guideline calculations in the Presentence Investigation Report (PSR). The total offense level is **2** (emphasis added) and Ms. Pack is in criminal history category I. The advisory range is zero months to six months. (PSR ¶78).

Ms. Pack respectfully asks the Court to accept her sincere contrition and remorse for her misconduct two years ago. A non-custodial sentence is not only consistent with the applicable guideline range of zero to six months; it is presumptively appropriate and encouraged under the sentencing guidelines and controlling Congressional policy statements. 18 U.S.C. § 994(j);

U.S.S.G. § 5C1.1, cmt. n. 9 ("sentence other than a sentence of imprisonment" generally appropriate for zero-point offenders like Ms. Pack).

Ms. Pack is 40 years old. She was born and raised in a suburban area of Englewood, New Jersey. Her parents, Dashiell and Sharon Vanterpool, are married and still reside in Englewood. Ms. Pack experienced a good childhood. Ms. Pack is close to her mother, and she is the only family member who is aware of Ms. Pack's federal prosecution.

In 2009, Ms. Pack joined the Navy. She was interested in serving in the military and wanted to also take advantage of education benefits that veterans receive. In 2011, she married Andrew Pack. They have a son, Carter, who is now fourteen years old. Ms. Pack became pregnant with her only child while in the Navy and had difficulty being on the ship while pregnant. She was honorably discharged after serving 3 ½ years in the Navy. Two years after they married, Ms. Pack and her husband separated. In 2023, they divorced. Their son is in 9th grade and attends a local Philadelphia school. Carter lives with his father in Philadelphia. Ms. Pack and her ex-husband have a cordial relationship. She speaks to her son daily and is involved in her son's day-to-day education and activities.

For several years, Ms. Pack worked in the catering industry. She owned and operated her own catering company Grace & Savor, LLC. Her business suffered, she believes, due to the large amount of publicity surrounding her case. As noted in the PSR, Ms. Pack currently takes on catering "gig work" for one particular client. Her primary focus right now is working toward a master's degree in nutrition. She is a full-time online student at Georgia State University. She hopes to complete her degree within two years. Her stated goal is to become a registered dietician with a focus on nutritional counseling for individuals who suffer from chronic illness.

Ms. Pack recognizes the seriousness of this case. She is an intensely private person and the negative attention she has received has been devastating as much as it has affected her own appreciation of her wrongdoing. As Ms. Pack's mother confirmed, Ms. Pack is a very private person. She described the difficulties Ms. Pack had in telling her mother about the charges, primarily because their family is "unfamiliar with the justice system." (PSR ¶ 45). Ms. Pack's therapist spoke openly with the probation officer following Ms. Pack's consent. Mikala Mitchell spoke at length by phone about Ms. Pack's diagnosis of generalized anxiety disorder. Ms. Mitchell explained she was shocked by the charges as it is not in Ms. Pack's character. (PSR ¶53). In describing Ms. Pack's overall reaction to facing charges, Ms. Mitchell said the case "shook her [Ms. Pack] to the core" (PSR ¶53). Ms. Pack thinks about the charges and her situation daily. She accepts responsibility and can now only move forward and assure the Court she will never violate the law again.

This Court can and should have confidence Ms. Pack will never commit another crime. Ms. Pack's contrition and remorse as well as statistical evidence regarding recidivism in a non-custodial sentence aptly serves as sufficient deterrent for Ms. Pack. Ms. Pack has felt the glare of public attention in local Philadelphia newspapers as well as the local news in Georgia. The publicity surrounding this case and voter fraud in general, arguably serves as a greater deterrent to the general public than any custodial sentence. A non-custodial sentence is also consistent with two other voter fraud cases prosecuted in this district. (See e.g. *United States v. Philip Pulley*, No. 24-288, where defendant Pulley cast multiple votes while also submitting false information on documents between 2018 and 2023 in Florida and Pennsylvania. Defendant Pulley was sentenced to a period of three years' probation). (See also, United States v. Matthew

Laiss, No. 25-386, where defendant Laiss was sentenced to three years' probation with 6 months of home confinement following a jury's verdict of guilt).

Regarding the goals of sentencing, a probationary or otherwise non-incarceration sentence will adequately provide for specific and general deterrence, retribution, and rehabilitation in light of the circumstances surrounding the case and Ms. Pack's personal history and characteristics, including her military service, her work history, motherhood, her caring for aging parents and her continuing education and career endeavors. If granted the ability to remain at liberty working and attending school, she will be subject to the strict supervision of the United States Probation Office, which the United States Supreme Court has recognized is a substantial restriction on one's liberty. *See Gall v. United States*, 552 U.S. 38, 48-49 (2007). Finally, a non-incarceration sentence would best serve Ms. Pack's rehabilitative needs, her continuing education goals and her mental health progress. Arguably, the most severe punishment for Ms. Pack is a lifelong felony conviction and attendant humiliation and shame.

For all the reasons cited herein and any others which may become apparent to the Court at Ms. Pack's sentencing hearing, the defense respectfully asks the Court to accept the joint recommendation and impose a non-incarceration sentence.

Respectfully submitted,

*/s/ Maranna J. Meehan*
MARANNA J. MEEHAN
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

I, Maranna J. Meehan, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I filed and served the attached Defendant's Sentencing Memorandum via electronic mail upon Nancy E. Potts, Assistant United States Attorney, Suite 1250, 615 Chestnut Street, Philadelphia, Pennsylvania 19106, via her email address Nancy.Potts@usdoj.gov.

*/s/ Maranna J. Meehan*
MARANNA J. MEEHAN
Assistant Federal Defender

Date: September 24, 2026