**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-384** |
| **MIYA V. PACK** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Miya Pack intentionally voted twice in a federal election and then gave false statements about it when confronted, conduct which erodes public trust in elections, one of the foundational elements of our democratic government. She chose to accept responsibility, however, and plead guilty in this case. For these reasons, as well as for the reasons provided below, the government recommends a sentence of probation that includes a significant community service requirement, to repay the American public for the harm she has caused it.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. BACKGROUND

On September 2, 2025, a grand jury sitting in this district returned an indictment charging the defendant with one count of voting more than once in a federal election, in violation of 52 U.S.C. § 10307(e) (Count One), and one count of voter fraud, in violation of 52 U.S.C. § 20511(2) (Count Two). On June 22, 2026, pursuant to the terms of a written guilty plea agreement, the defendant pled guilty to Count One of the indictment. During her guilty plea colloquy, the defendant admitted that she knowingly and willfully voted twice in the 2024 general election, which included the election for the offices of President and Vice President of the United States. On October 26, 2024, she cast a ballot in-person and using a machine in Bergen County, New Jersey, and ten days later, on Election Day, November 5, 2024, she voted in-person at the polls in Philadelphia, Pennsylvania. In each instance the defendant cast a vote for the offices of President and Vice President of the United States, and she did so for the purpose of having her vote count more than once. When confronted by federal agents, the defendant falsely claimed that she had

cast a mail-in ballot in New Jersey and did not know if it had been received when she voted in Pennsylvania, even though she knew that she had voted in New Jersey in-person and on a machine.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The maximum sentence that may be imposed on the defendant is a term of imprisonment of five years, a three-year period of supervised release, a $10,000 fine[2], and a $100 special assessment.

### B. Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory Guideline range as follows: The base offense level is 6, pursuant to § 2H2.1(a)(3). PSR ¶ 20. Pack is entitled to a two-level downward adjustment for acceptance of responsibility pursuant to § 3E1.1(a). PSR ¶ 26. She is also eligible for a two-level reduction for being a zero-point offender, pursuant to § 4C1.1. PSR ¶ 27. The resulting offense level is 2. She has zero criminal history points, placing her in Criminal History Category I. At a 2-I, her advisory Guideline range is zero to six months of

---

[2] The government maintains that the maximum fine is $10,000 and has no comment on the Probation Office's position that the maximum fine is $250,000. The statute setting forth the offense of conviction here, 52 U.S.C. § 10307, provides that the maximum fine is $10,000. 52 U.S.C. § 10307(e)(1). Consistent with that language, the guilty plea agreement stated that the maximum fine is $10,000, and the government's change of plea memorandum and the Court's guilty plea colloquy set forth the maximum fine as $10,000. The government is abiding by the terms of its guilty plea agreement that the fine may be no more than $10,000.

Nonetheless, if the Court concludes that the maximum fine is greater than $10,000, the government requests that, before imposition of sentence, the Court advise the defendant on the record of the maximum fine, advise her that it is different from what is in the guilty plea agreement and what was stated at her guilty plea hearing ($10,000), and confirm that the defendant still wishes to maintain her guilty plea.

incarceration in Zone A of the Sentencing Table. Neither party raised any objections to the Guideline calculation.

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The defendant engaged in a serious offense, and she committed her crime as an adult and with some level of premeditation and planning. She knew it was wrong because she tried to conceal it. While there is no individual victim that can come to court to describe the harms suffered from the defendant's crime, it is a crime that fundamentally impacts all Americans. Voter fraud corrodes the trust that citizens place in one another to act honestly with respect to elections, undermines civic norms, and wears away at the public's confidence in the integrity of elections and the legitimacy of their outcomes. While one extra vote is highly unlike to make a difference in the outcome of an election, it contributes to the public perception that no one is following even the basic rules of society. It weakens voluntarily compliance by leading others to refuse to follow the rules, which in turn raises the economic and administrative burdens of combating election fraud.

Because the defendant chose to accept responsibility for her offense and plead guilty, and the Guideline range for her offense is low, the government agreed to jointly recommend to the Court a sentence of probation which is at the bottom of her Guideline range. However, because of the type of societal harms caused by her crime, the government requests that the Court include a significant public service requirement as a condition of the defendant's sentence. Such a sentence will serve "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Furthermore, the recommended sentence affords adequate deterrence to others who would commit a similar offense. *Id.*

A sentence of probation within the advisory Guidelines range assures that the defendant's sentence is consistent with those imposed in this district on similarly situated offenders, thus

complying with Section 3553(a)(6) and avoiding undue disparity.[3] As noted in the defendant's sentencing memorandum, in two other multiple voting cases in this district, the defendants each received sentences of three years of probation. Def. Mem. at 3-4.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). Also, restitution is not an issue in this case. § 3553(a)(7).

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence of probation. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

In addition to a public service requirement, the government also requests that the terms of probation include requiring the defendant to cancel her voter registration in both New Jersey and Pennsylvania, assuming she continues to reside in Georgia or another state.

[3] The United States Sentencing Commission has no published statistics on the types of sentences imposed nationwide during the last five fiscal years (FY2021-2025) for defendants whose primary guideline was §2H2.1, with a Final Offense Level of 2 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure because there was an insufficient number of such defendants. *See* United States Sentencing Commission Judiciary Sentencing Information, https://jsin.ussc.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FJSIN%2F_portal%2FJSIN&page=Sentencing%20Table.

## IV. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a sentence of probation that includes a significant community service requirement is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*s/ Nancy E. Potts*
NANCY E. POTTS
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Maranna J. Meehan
Defender Association of Philadelphia
Federal Court Division
The Curtis Center Building
601 Walnut Street, Suite 540 West
Independence Square West
Philadelphia, PA 19106
Maranna_Meehan@fd.org

*s/ Nancy E. Potts*
NANCY E. POTTS
Assistant United States Attorney

Date: September 24, 2026